# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| LCS Group, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Case No. 1:18-cv-2688-AT |
| v. | : | |
| | : | |
| Shire LLC, Shire Development LLC, | : | |
| Shire PLC, Haug Partners LLP, and | : | |
| Baker Hostetler LLP, | : | |
| | : | |
| Defendants. | | |

## MEMORANDUM OF SHIRE LLC, SHIRE DEVELOPMENT LLC, SHIRE PLC, AND HAUG PARTNERS LLP IN SUPPORT OF MOTION FOR SANCTIONS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

I.      Introduction ..........................................................................................................1

II.     Background ............................................................................................................3

        A.      The IPR: The First Action Involving the '813 Patent .............................3

        B.      The South Carolina Litigation: The Second Action Based on the
                '813 Patent .................................................................................................4

        C.      The Present Lawsuit: The Third Action Based on the '813 Patent.........6

III.    Legal Standards .....................................................................................................7

IV.     Argument ...............................................................................................................9

        A.      The Claims of the Amended Complaint Are Frivolous ...........................9

                1.      LCS's Common-law Claims Violate Rule 11 .............................9

                2.      LCS's RICO Allegations Are Especially Sanctionable ...........12

        B.      An Award of Attorneys' Fees Is the Minimum Sanction Necessary
                to Deter Repetition ..................................................................................15

        C.      Sanctions Are Also Warranted Under 28 U.S.C. § 1927 .......................17

V.      Conclusion ...........................................................................................................18

# TABLE OF AUTHORITIES

## Cases

*Carousel Foods of America, Inc. v. Abrams Co., Inc.*,
   423 F. Supp. 2d 119 (S.D.N.Y. 2006) ........................................................... 12, 13

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990) ...................................................................................... 8

*de la Fuente v. DCI Telecomms., Inc.*,
   259 F. Supp. 2d 250 (S.D.N.Y. 2003) ........................................................... 9

*DeFalco v. Bernas*,
   244 F.3d 286 (2d Cir. 2001) ......................................................................... 14

*Dow Chem. Co. v. Exxon Corp.*,
   139 F.3d 1470 (Fed. Cir. 1998) .................................................................... 11

*Dubai Islamic Bank v. Citibank, N.A.*,
   256 F. Supp. 2d 158 (S.D.N.Y. 2003) ........................................................... 12

*E.E.O.C. v. Waffle House, Inc.*,
   534 U.S. 279 (2002) ...................................................................................... 11

*Enmon v. Prospect Capital Corp.*,
   675 F.3d 138 (2d Cir. 2012) ......................................................................... 9

*Fishoff v. Coty Inc.*,
   634 F.3d 647 (2d Cir. 2011) ......................................................................... 8

*Gal v. Viacom Int'l, Inc.*,
   403 F. Supp. 2d 294 (S.D.N.Y. 2005) ........................................................... 8

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989) ...................................................................................... 13, 14

*Huebner v. Midland Credit Mgmt., Inc.*,
   897 F.3d 42 (2d Cir. 2018) ........................................................................... 8

*In re 60 E. 80th St. Equities, Inc.*,
   218 F.3d 109 (2d Cir. 2000) ......................................................................... 9

*Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Invs. Ltd.*,
   154 F. Supp. 2d 682 (S.D.N.Y. 2001) ........................................................... 14

*Kashelkar v. Rubin & Rothman*,
   97 F. Supp. 2d 383 (S.D.N.Y. 2000) ............................................................. 15

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (2d Cir. 1996) ................................................................... 12, 13

*Kim v. Kimm*,
    884 F.3d 98 (2d Cir. 2018) ..................................................................... 8, 9, 14

*Lockwood v. Sheppard, Mullin, Richter & Hampton, LLP*,
    No. CV 09-5157-JFW, 2009 WL 9419499 (C.D. Cal Nov. 24, 2009) ........................... 11

*Miranda v. Ponce Fed. Bank*,
    948 F.2d 41 (1st Cir. 1991) ........................................................................... 12

*Morley v. Ciba-Geigy Corp.*,
    66 F.3d 21 (2d Cir. 1995) ............................................................................... 8

*Pasternak v. Lab. Corp. of Am. Holdings*,
    59 N.E.3d 485 (N.Y. 2016) ........................................................................... 10

*Pelletier v. Zweifel*,
    921 F.2d 1465 (11th Cir. 1991) ..................................................................... 13

*Perlman v. Zell*,
    185 F.3d 850 (7th Cir. 1999) ......................................................................... 14

*Rates Tech. Inc. v. Speakeasy, Inc.*,
    685 F.3d 163 (2d Cir. 2012) ......................................................................... 12

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ................................................................................... 15

*Sanfilippo v. Brewerton*,
    No. 2:17-183-RMG, 2017 WL 5591615 (D.S.C. Nov. 20, 2017) ........................... passim

*Santana v. Adler*,
    1:17-cv-06147, 2018 WL 2172699 (S.D.N.Y. May 10, 2018) ................................. 14

*SAS Inst., Inc. v. Iancu*,
    138 S. Ct. 1348 (2018) ................................................................................. 3

*Smith v. Our Lady of the Lake Hospital*,
    960 F.2d 439 (5th Cir. 1992) ......................................................................... 12

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008) ......................................................................... 14

*Storey v. Cello Holdings, L.L.C.*,
    347 F.3d 370, 387 (2d Cir. 2003) ..................................................................... 8

*Stuart v. Freiberg*,
    316 Conn. 809 (2015) .................................................................... 10

## **Statutes**

28 U.S.C. § 1927 .......................................................................... 8, 9, 17

35 U.S.C. § 141(c) ............................................................................... 4

35 U.S.C. § 142 ................................................................................... 4

## **Other Authorities**

*Shire Dev. LLC v. LCS Grp., LLC*,
    IPR2014-00739, Paper 1 ................................................................. 3

*Shire Dev. LLC v. LCS Grp., LLC*,
    IPR2014-00739, Paper 14 ............................................................... 4

*Shire Dev. LLC v. LCS Grp., LLC*,
    IPR2014-00739, Paper 19 ............................................................... 4

*Shire Dev. LLC v. LCS Grp., LLC*,
    IPR2014-00739, Paper 21 ............................................................... 4

*Shire Dev. LLC v. LCS Grp., LLC*,
    IPR2014-00739, Paper 6 ............................................................ 3, 10

*Shire Dev. LLC v. LCS Grp., LLC*,
    IPR2014-00739, Paper 7 ................................................................. 3

## **Rules**

Fed. R. Civ. P. 11 ..................................................................... passim

Fed. R. Civ. P. 11(b) .......................................................................... 8

Fed. R. Civ. P. 11(b)(2) ...................................................................... 7

Fed. R. Civ. P. 11(c) .......................................................................... 7

Fed. R. Civ. P. 11(c)(1) ...................................................................... 7

Fed. R. Civ. P. 11(c)(4) ................................................................ 15, 16

Fed. R. Civ. P. 12(b)(6) .............................................................. passim

I.      **Introduction**

Defendants Shire LLC, Shire Development LLC ("Shire Development"), Shire plc, and Haug Partners LLP ("Haug Partners") (collectively "Movants") submit this memorandum in support of the Motion for Sanctions against Plaintiff LCS Group, LLC ("LCS Group"), LCS Group's counsel Stephen Lobbin, and Mr. Lobbin's law firm Foundation Law Group LLP (collectively "LCS").

The present case is the third in a series of actions involving Plaintiff LCS Group and its sole member and manager, Dr. Louis Sanfilippo ("Dr. Sanfilippo") (ECF No. 27 ("Amended Complaint") ¶ 4), concerning U.S. Patent No. 8,318,813 ("the '813 patent").  In 2014 and 2015, the U.S. Patent and Trademark Office ("PTO") conducted an *inter partes* review ("IPR") of the '813 patent that included parties Shire Development and LCS Group.  At the conclusion of the proceedings, the PTO ordered all claims of the '813 patent cancelled after Dr. Sanfilippo willfully and persistently engaged in harassing misconduct, including threats against: (i) Shire plc's senior management; (ii) an expert in the IPR proceedings; and (iii) Shire Development's outside counsel.  *See Sanfilippo v. Brewerton*, No. 2:17-183-RMG, 2017 WL 5591615, at *3 (D.S.C. Nov. 20, 2017) (Ex. 1[1]) (noting "[t]he IPR proceeding concluded with the cancellation of the '813 patent because of [Dr. Sanfilippo's] repeated and willful misconduct during the IPR proceeding . . . .")

Despite the right to appeal the PTO decision to the United States Court of Appeals for the Federal Circuit, no appeal was ever taken.  Instead, Dr. Sanfilippo waited until 2017 to file a second action concerning the '813 patent, this time in the District of South Carolina against an expert witness from the above IPR proceeding—Dr. Brewerton—alleging that the IPR petition

---

[1] "Ex. ___" refers to the indicated exhibit to the Declaration of Porter F. Fleming, submitted concurrently herewith.

and the supporting expert declaration were fraudulent and libelous.  Judge Gergel from the South Carolina Court dismissed the suit under Rule 12(b)(6), expressly finding that a district court has no authority to review decisions of the PTO, and holding that the suit by Dr. Sanfilippo—the sole manager and member of LCS Group—was "*frivolous*" and "***an ongoing, abusive use of legal process***."  *Id.* at *3 (emphasis added).  Moreover, Judge Gergel invited a motion for attorney fees due to the baseless nature of the lawsuit.  *Id.*  A motion was not ultimately filed.  As with the underlying IPR proceeding, no appeal was filed from Judge Gergel's well-reasoned decision.

In the present case, Dr. Sanfilippo—this time cloaked as LCS Group—now seeks a third bite at the apple.  Specifically, LCS's Amended Complaint alleges contract, fraud, tortious interference, and RICO claims against Movants in connection with the original IPR proceedings. If Judge Gergel's decision were not enough to warn LCS that the litigation over the '813 patent is at an end, Movants made clear in the April and May 2018 pre-motion correspondence (Ex. 2; ECF No. 16), in accordance with Sections III.A and B of this Court's Individual Practices, that LCS's claims were wholly frivolous.  Moreover, LCS was served with a Rule 11 motion for sanctions on July 18, 2018.  Nevertheless, LCS has refused to withdraw this completely groundless suit.  Instead, LCS put Movants through the expense of moving to dismiss the suit (including the RICO claim, which required 11 out of the 30 allotted pages to point out the copious deficiencies with this claim), only to have LCS respond in its opposition—in a mere two sentences—that it would not oppose dismissal of the RICO claim, but wanted to reserve the right to bring that claim back at a future date.  ECF No. 41 at 3, 22.  The opposition was silent as to the merits of the RICO claim.  As for the remaining claims (First through Fifth Claim), LCS's arguments fare no better, and contravene well-established precedent.

Despite many warnings, LCS refuses to acknowledge and accept that the litigation concerning the '813 patent is over.  Only Rule 11 sanctions will deter LCS from future harassing litigation that wastes the resources of this Court and the parties.  Therefore, Movants respectfully request that the Court impose Rule 11 sanctions for LCS Group's, Mr. Lobbin's, and Foundation Law Group's abusive use of legal process in filing the Amended Complaint.

## II.   Background

### A.     The IPR: The First Action Involving the '813 Patent

On May 9, 2014, Shire Development filed a petition for IPR with respect to the '813 patent, which was then owned by LCS Group.  *Shire Dev. LLC v. LCS Grp., LLC*, IPR2014-00739, Paper 1 (ECF No. 27-3).[2,3]  An IPR is a procedure that "allows private parties to challenge previously issued patent claims in an adversarial process before the Patent Office that mimics civil litigation."  *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1352 (2018).  Once a party files an IPR petition, the patent owner has the right to file a preliminary response explaining why no IPR should be instituted.  LCS Group took advantage of this right and filed a detailed opposition to the IPR petition.  *Shire Dev. LLC v. LCS Grp., LLC*, IPR2014-00739, Paper 6.  The Patent Trial and Appeal Board ("PTAB") weighed these arguments and concluded that Shire Development had established a reasonable likelihood of demonstrating the unpatentability of the claims of the '813 patent on several grounds.  *Shire Dev. LLC v. LCS Grp., LLC*, IPR2014-00739, Paper 7.  The PTAB accordingly instituted IPR proceedings against the '813 patent.

---

[2] LCS later transferred ownership of the '813 patent to Lucerne Biosciences, LLC, and the caption of the IPR was amended accordingly.  For simplicity, this brief refers to LCS Group and Lucerne Biosciences, LLC interchangeably, and refers to the original caption of the IPR.

[3] The proceedings before the PTAB can be found at https://ptab.uspto.gov/#/login by entering Patent No. 8318813 without commas in the "Patent Number" field.

LCS Group actively participated in the IPR process.  In particular, LCS Group: (i) submitted a detailed Patent Owner's Response, outlining why it believed that the claims of the '813 patent were patentable; and (ii) filed a motion to submit supplemental information that, in LCS Group's view, demonstrated the patentability of the '813 patent claims.  *Shire Dev. LLC v. LCS Grp., LLC*, IPR2014-00739, Papers 19 and 21.  However, the proceedings were marred by the persistent misconduct of LCS Group and its principal, Dr. Sanfilippo.  Dr. Sanfilippo embarked on a course of conduct that featured harassing e-mails and thinly veiled threats, including against Shire Development's outside counsel and Shire Development's expert Dr. Brewerton.  Ex. 4, *Shire Dev. LLC v. LCS Grp., LLC*, IPR2014-00739, Paper 14.  Despite directives from the PTAB to cease this misconduct, Dr. Sanfilippo persisted.  *See* Exs. 3-5, *Shire Dev. LLC v. LCS Grp., LLC*, IPR 2014-00739, Papers 11, 14-15.  After LCS Group's failure to respond to a sanctions motion and the PTAB's subsequent order to show cause why adverse judgment should not be entered, the PTAB construed such failure as a request for adverse judgment, and accordingly ordered the cancellation of all claims of the '813 patent.  *Shire Dev. LLC v. LCS Grp., LLC*, IPR2014-00739, Paper 33.  Although LCS Group had the right to appeal this adverse judgment to the United States Court of Appeals for the Federal Circuit (*see* 35 U.S.C. §§ 141(c), 142; 37 C.F.R. § 90.3(a)(1)), it failed to do so.

**B.     The South Carolina Litigation: The Second Action Based on the '813 Patent**

In 2017, Dr. Sanfilippo—"the sole Manager and Member of LCS [Group] since the company was formed" (Amended Complaint ¶ 4)—filed a lawsuit in South Carolina based on the same operative facts as the present case.  Specifically, he sued Shire Development's expert Dr. Brewerton, alleging that the IPR petition was fraudulent and claiming "tens or hundreds of millions of dollars" in damages.  Ex. 6 ¶ 30.  In that case, Dr. Sanfilippo explained that LCS Group "signed a Confidentiality Disclosure Agreement ('CDA') with 'Shire LLC'."  Ex. 6 ¶ 7.

Dr. Sanfilippo claimed that, "in the context of this CDA between LCS group (signed by Plaintiff) and 'Shire LLC,' a petition for *Inter Partes Review* (IPR) . . . was made by another Shire subsidiary, 'Shire Development LLC.'" Ex. 6 ¶ 8. Dr. Sanfilippo argued that Dr. Brewerton "made numerous false representations [in the IPR declaration] regarding relevant and important teachings in the medical literature related to the validity of the Plaintiff's invention." *See Sanfilippo*, 2017 WL 5591615, at \*1.

Judge Gergel granted Dr. Brewerton's Rule 12(b)(6) motion to dismiss and made abundantly clear that Dr. Sanfilippo's suit was wholly frivolous. In particular, Judge Gergel explained that: (i) "[t]he proper forum for challenging the veracity of [Dr. Brewerton's] expert opinion was the IPR proceeding before the PTAB," (ii) "[t]he IPR proceedings concluded with the cancellation of the '813 Patent because of [Dr. Sanfilippo's] repeated and willful misconduct during the IPR proceeding," and not due to the IPR petition or declaration, and (iii) a district court "has no jurisdiction to review the decisions of the PTAB. The United States Court of Appeals for the Federal Circuit has exclusive jurisdiction to hear appeals from IPR proceedings at the PTAB." *Id.* at \*2-3. And to eliminate any doubt about the frivolity of the suit, Judge Gergel stated:

> [Dr. Sanfilippo] is engaging *in an ongoing, abusive use of legal process*. When his '813 Patent was challenged, he engaged in improper behavior before the tribunal even after he was ordered to cease. Rather than answer for his conduct, he ceased participation in the proceedings and, as a result, the '813 Patent was cancelled. Now he brings a lawsuit lacking any arguable basis in law or fact against a witness from that proceeding. *This frivolous suit* likely has created significant legal expenses. *The Court therefore grants Defendant leave to file a motion for attorney's fees* under Rule 54(d)(2) of the Federal Rules of Civil Procedure within fourteen days of the date of this Order.

*Id.* at \*3 (emphasis added). The South Carolina case was closed on November 20, 2017. No appeal was filed.

### C.      The Present Lawsuit: The Third Action Based on the '813 Patent

Having failed in his individual capacity to collaterally attack the PTO's judgment as based upon fraud, and undeterred by Judge Gergel's decision, Dr. Sanfilippo—aided by counsel and under the guise of his one-man company "LCS Group"—filed the present suit based on the same operative facts as the earlier *Sanfilippo* case.  Specifically, LCS claims that although a CDA was in place, an IPR petition was filed that allegedly contains fraudulent misstatements about the prior art and the '813 patent.  *Compare* Ex. 6 ¶ 9 *with* Amended Complaint ¶ 60.

In response to LCS's March 27, 2018 Original Complaint (ECF No. 1), LCS Group's counsel was provided with an April 26, 2018 letter (Ex. 2) detailing the many fatal deficiencies in LCS's claims.  Among other things, the letter informed LCS Group's counsel of Judge Gergel's decision.  LCS refused to withdraw the complaint.  In accordance with the Court's Individual Practices, a pre-motion letter was filed with the Court on May 18, 2018, which further detailed the reasons why LCS's claims must be dismissed.  ECF No. 16.  Instead of recognizing the frivolity of its allegations and dismissing the case with prejudice, LCS instead doubled down and announced that it would be: (i) amending its then-pending claims; (ii) adding a RICO claim; and (iii) joining new parties, including defense counsel Haug Partners LLP.  ECF No. 19.

On July 5, 2018, LCS filed its Amended Complaint (ECF No. 27),[4] which failed to cure numerous fatal deficiencies in the original claims and introduced new frivolous and deficient RICO allegations.  LCS was served with a Rule 11 motion for sanctions on July 18, 2018.  (Ex. 7).  Additionally, on July 26, 2018, Movants filed a motion to dismiss LCS's Amended Complaint (ECF Nos. 38-39) and clarified that the motion for sanctions would be joined by all Movants.  Ex. 8.

---

[4] LCS originally filed its Amended Complaint on June 26th.  ECF No. 20.  Due to filing errors by LCS, the submission was rejected and LCS was required to refile.

LCS did not withdraw its Amended Complaint, and instead opposed Movants' motion to dismiss.  ECF No. 41.  LCS's opposition did not dispute that the RICO claim was fatally deficient on multiple grounds, but instead responded—in a mere two sentences—that it wished to have the opportunity to bring back this claim after taking discovery.  ECF No. 41 at 3, 22.  Nor did LCS's opposition offer any convincing reason to overcome Movants' arguments that: (i) the tort claims are time-barred; and (ii) the contract claims contravene controlling precedent. Moreover, LCS misrepresented that it relied on the statements in the IPR petition—a required element for LCS's fraud claims.  *See* Amended Complaint ¶¶ 124, 129.  LCS's factual statement is flatly contradicted by evidence that Dr. Sanfilippo submitted to Judge Gergel, which expressly and unequivocally demonstrates that there was no such reliance.  *See* Ex. 9.

For these reasons, as discussed in detail below, Rule 11 sanctions are warranted.

### III.    Legal Standards

An attorney may be subject to sanctions under Rule 11 for presenting frivolous claims in a pleading.  Fed. R. Civ. P. 11(b)(2) and (c).  "Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."  Fed. R. Civ. P. 11(c)(1).

Under Rule 11, attorneys "presenting to the court a pleading, written motion, or other paper" must certify that, to the best of their "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that:

> (1) the submission is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonable based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

To avoid the risk of sanctions, an attorney filing a complaint must "ensure that papers filed are well-grounded in fact, legally tenable, and not interposed for any improper purpose." *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 307 (S.D.N.Y. 2005) (internal quotation mark omitted) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)).

"[T]he standard for triggering award of fees under Rule 11 is objective unreasonableness and not based on the subjective beliefs of the person making the statement." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003). The operative question is whether the argument is frivolous, i.e., the legal position has "'no chance of success,' and there is 'no reasonable argument to extend, modify or reverse the law as it stands.'" *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) (quoting *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995)).

Additionally, attorneys may be sanctioned for "so multipl[ying] the proceedings in any case unreasonably and vexatiously[;]" such sanctions include the requirement "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. As the Second Circuit recently explained, sanctions under section 1927 may be imposed where: "(1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 55 (2d Cir. 2018) (quoting *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018)). "A court may infer bad faith when a

– 8 –

party undertakes frivolous actions that are 'completely without merit.'" *Id.* (quoting *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000)).  Sanctions under section 1927 may be imposed against individual attorneys, as well as against the offending law firm as a whole.  *See Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 147-48 (2d Cir. 2012).

## IV.   Argument

### A.     The Claims of the Amended Complaint Are Frivolous

#### 1.     LCS's Common-law Claims Violate Rule 11

As detailed in Movants' Rule 12(b)(6) papers (ECF Nos. 39, 43), LCS's common-law claims are fatally deficient for multiple reasons.  LCS's maintenance of this lawsuit despite clearly unsupportable claims violates Rule 11.  Of particular note, LCS has refused to withdraw its Amended Complaint despite the fact that it contains, among other things: (i) fraud and tortious interference claims that are clearly time barred; (ii) factual allegations that are flatly inconsistent with evidence submitted in the *Sanfilippo* case; (iii) claims that are preempted by federal patent law; (iv) impermissible contract claims against non-parties to the contract; and (v) contract claims that are barred by controlling Second Circuit case law.

For purposes of Rule 11, "[b]ringing an obviously time-barred complaint can itself be frivolous." *de la Fuente v. DCI Telecomms., Inc.*, 259 F. Supp. 2d 250, 263 (S.D.N.Y. 2003).  Because: (i) LCS's fraud and tortious-interference claims are clearly barred by a three-year limitation period; and (ii) LCS has pressed these claims even after being put on notice of the time-bar issue, Rule 11 sanctions should be imposed.  LCS was provided—both in pre-motion correspondence (ECF No. 16 at 2-3; Ex. 2) and in Movants' Rule 12(b)(6) papers (*see* ECF No. 39 at 12-13, 18; ECF No. 43 at 5-8, 10)—ample explanation why these claims are clearly time-barred.  Nevertheless, LCS maintained its Amended Complaint, which on its face demonstrates that these claims accrued well over three years before the present suit was filed.  Indeed, the

Amended Complaint makes evident that LCS seeks redress for conduct that occurred no later than May 2014—approximately four years before the present action was commenced in 2018. Because LCS continues to press these obviously time-barred claims despite being put on ample notice, this Court should impose Rule 11 sanctions for filing the fraud and tortious-interference claims.

Additionally, it is well-established that in order to state a claim for fraud, the plaintiff—rather than a third party—must have relied on the allegedly fraudulent representation. *See Pasternak v. Lab. Corp. of Am. Holdings*, 59 N.E.3d 485, 493 (N.Y. 2016); *Stuart v. Freiberg*, 316 Conn. 809, 822 (2015). In an attempt to satisfy this requirement, LCS alleges that it "had a belief in the truth of [Movants'] representations" with respect to the IPR petition. Amended Complaint ¶ 129. But in addition to falling far short of the Rule 9(b) pleading standard, this allegation is factually frivolous. Indeed, in the *Sanfilippo* case, Dr. Sanfilippo attached to his pleading an e-mail (Ex. 9) that he wrote to his counsel ***prior to*** the filing of LCS Group's August 12, 2014 preliminary response. In that August 3, 2014 e-mail—entitled "Brewerton fraud on the BN art"—Dr. Sanfilippo stated that "Brewerton willfully perpetrated fraud in his Declaration and you can actually see how he did it through two ADHD/BN references from 2006/2007 [Dr. Sanfilippo] uncovered early this morning." Ex. 9 at 1. The e-mail then goes on to outline why Dr. Sanfilippo believed that statements in the IPR petition were incorrect, and accused Dr. Brewerton's reasoning of resting on an "intentionally false premise" and of making "willful misrepresentations of the art[.]" Ex. 9 at 1-2. This e-mail completely undercuts LCS's factual representation that it relied on the truth of the statements in the IPR petition. *Compare* Amended Complaint ¶¶ 124, 129 *with* Ex. 9. Moreover, on August 12, 2014, LCS submitted a detailed opposition to the IPR petition. *Shire Dev. LLC v. LCS Grp., LLC*, IPR2014-00739, Paper 6. Had

– 10 –

any meaningful pre-filing investigation been done, LCS's counsel would have realized as much. Accordingly, LCS's baseless factual allegation violates Rule 11, and sanctions should be imposed.

Additionally, LCS's First Amended Complaint is sanctionable because it contains allegations that Movants are liable for fraud and tortious interference based on the filing of the IPR petition.  As explained to LCS in pre-motion correspondence and reiterated in Movants' Rule 12(b)(6) papers (*see* Ex. 2; ECF No. 39 at 14-15, 18-19; ECF No. 43 at 8-11), liability based on such allegations is preempted by federal law because they are "no more than [claims alleging] bad faith misconduct before the PTO."  *Lockwood v. Sheppard, Mullin, Richter & Hampton, LLP*, No. CV 09-5157-JFW, 2009 WL 9419499, at *7 (C.D. Cal Nov. 24, 2009) *aff'd*, 403 F. App'x 508 (Fed. Cir. 2010) (quoting *Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1477 (Fed. Cir. 1998)).  Despite being put on notice of this fatal deficiency, LCS continues to assert common-law tort liability based upon the filing of the IPR petition.

LCS's contract claims are equally sanctionable.  As detailed in pre-motion correspondence and in Movants' Rule 12(b)(6) papers (Ex. 2; ECF No. 39 at 11-12; ECF No. 43 at 4), "[i]t goes without saying that a contract cannot bind a nonparty."  *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).  As Dr. Sanfilippo correctly represented in the South Carolina case, the CDA was between LCS Group and "Shire LLC."  Ex. 6 ¶ 7.  Nevertheless, LCS continues to press contract claims against Shire Development, Shire plc, and Haug Partners, despite the fact that they are not parties to the contract.

Moreover, as Movants have explained (ECF No. 39 at 9-10; ECF No. 43 at 2-3), LCS's interpretation of the contract as prohibiting the filing of the IPR petition would render the contract unenforceable as a matter of law.  *See Rates Tech. Inc. v. Speakeasy, Inc.*, 685 F.3d 163,

– 11 –

172 (2d Cir. 2012) (holding that "covenants barring future challenges to a patent's validity entered into prior to litigation are unenforceable").  LCS has offered no serious counter-argument, and instead presses on with its baseless contract theories.  Indeed, in its opposition brief, LCS offered no response to the argument that Haug Partners cannot be subject to contract liability because an agent is not a party to a contract entered into on behalf of its principal.  ECF No. 39 at 12 (citing Restatement (Third) of Agency § 6.01 (Am. Law. Inst. 2006) (June 2018 update)).

### 2.    LCS's RICO Allegations Are Especially Sanctionable

LCS's RICO allegations further demonstrate—and amplify—the need for sanctions in this case.  "Given the . . . proliferation of civil RICO claims and the potential for frivolous suits in search of treble damages, greater responsibility will be placed on the bar to inquire into the factual and legal bases of potential claims or defenses prior to bringing such suit or risk sanctions for failing to do so." *Smith v. Our Lady of the Lake Hospital*, 960 F.2d 439, 444 (5th Cir. 1992).

"Courts in this Circuit have on numerous occasions imposed Rule 11 sanctions based upon the filing of a frivolous RICO action." *Carousel Foods of America, Inc. v. Abrams Co., Inc.*, 423 F. Supp. 2d 119, 124 (S.D.N.Y. 2006) (quoting *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649 (2d Cir. 1996).  "Rule 11's deterrence value is particularly important in the RICO context." *Katzman* at 660.  This is because "[c]ivil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Katzman*, 167 F.R.D. at 655 (S.D.N.Y. 1996) (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991)).  "The consequences to anyone of being accused of racketeering ***are dire***.  As this court has long recognized, '[T]he mere assertion of a RICO claim … has an almost ***inevitable stigmatizing effect*** on those named as defendants.'" *Carousel*, 423 F. Supp. 2d at 123 (emphasis added) (citing *Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 163 (S.D.N.Y. 2003);

*Katzman*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996)).  Moreover, this Court has explained that

improper RICO claims are even more egregious when levied against a law firm: "[t]he

consequences to a law firm, in particular, are ***nothing short of disastrous***. . . .  [E]thical lawyers

have no business bringing RICO allegations against another lawyer as a tool to force settlement

negotiations, or as a litigation strategy in a contested business matter."  *Carousel*, 423 F. Supp.

2d at 123; *see also Pelletier v. Zweifel*, 921 F.2d 1465, 1522 (11th Cir. 1991) ("Particularly with

regard to civil RICO claims, plaintiffs must stop and think before filing them.").

      LCS's RICO allegations are predicated upon and suffer from the same deficiencies as

LCS's common-law fraud claims.  Moreover, even a cursory investigation of RICO case law

would demonstrate to a reasonable attorney that LCS's RICO allegations are frivolous.  As

detailed in Movants' Rule 12(b)(6) papers, LCS's RICO claim, among other things: (i) fails to

plead the minimum number of RICO predicate acts; (ii) does not meet the required open- or

closed-ended pattern of acts; (iii) does not satisfy proximate causation; (iv) fails to identify a

RICO enterprise with particularity; (v) fails to plead that Haug Partners participated in a RICO

enterprise; (vi) is time-barred; and (vii) fails to plead RICO fraud with particularity under Rule

9(b).  ECF No. 39 at 20-30.  LCS did not dispute these fatal deficiencies, yet forced Movants to

go through the effort and expense of moving to dismiss LCS's frivolous RICO claim.  ECF No.

41.

      Had LCS performed even a cursory review of RICO case law, it would have known that,

under long-standing Supreme Court precedent, a RICO claim must allege an open- or closed-

ended pattern of predicate acts.  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241-42 (1989); ECF

No. 39 at 24.  Yet, LCS relies on an inherently terminable "scheme to disclose and attack the

'813 patent via [Shire Development's] public IPR petition" that does not pose a threat of future

criminal activity and cannot constitute an open-ended pattern. *See Santana v. Adler*, 1:17-cv-06147, 2018 WL 2172699, at \*6 (S.D.N.Y. May 10, 2018) (Torres, J.); *DeFalco v. Bernas*, 244 F.3d 286, 323 (2d Cir. 2001); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008); ECF No. 39 at 24-25. And LCS admits that the alleged RICO predicate acts occurred only "months" apart (Amended Complaint ¶ 54), which cannot satisfy the closed-ended pattern requirement. *H.J. Inc.*, 492 U.S. at 242 ("[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement . . . ."). Indeed, "[t]he Second Circuit has never held a period of less than two years" to satisfy the closed-ended continuity requirement. *Santana*, 2018 WL 2172699, at \*6 (quotations omitted) (citing *Spool*, 520 F.3d at 184). This, alone, is sufficient to demonstrate that LCS's counsel either failed to investigate or willfully disregarded well-established case law that precluded LCS's RICO claim. But this is not LCS's only failure.

Had LCS conducted a reasonable investigation, it also would have known that, under Second Circuit precedent, litigation activities in the absence of corruption—including the preparation and filing of sworn declarations—"cannot constitute a RICO predicate act." *Kim v. Kimm*, 884 F.3d 98, 103-105 (2d Cir. 2018). LCS would therefore have known that the filing of the IPR petition and the accompanying expert declaration was not a valid ground for a RICO claim.

With minimal effort, LCS also would have known that "[b]reach of contract is not fraud" and that any alleged breach of the CDA therefore could not support a RICO fraud claim. *Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Invs. Ltd.*, 154 F. Supp. 2d 682, 694 (S.D.N.Y. 2001) (quoting *Perlman v. Zell*, 185 F.3d 850, 853 (7th Cir. 1999)). Indeed, LCS's counsel was informed that an alleged breach of contract cannot form the basis for fraud in the April 26, 2018

– 14 –

(Ex. 2) and May 18, 2018 (ECF No. 16) letters, which were sent to LCS's counsel and filed with the Court respectively.  But this information was apparently ignored.

LCS would have also known—and indeed LCS's counsel ***did*** know—that LCS's RICO allegations lack the requisite proximate causation.  As explained above, in the earlier South Carolina lawsuit, Judge Gergel rejected the argument that the same IPR petition at issue in this case caused harm to Dr. Sanfilippo, instead explaining that the '813 patent was cancelled "because of [Dr. Sanfilippo's] repeated and willful misconduct during the IPR proceeding." LCS's counsel was informed of this fact and legal decision multiple times, including in the April 26 pre-motion letter and the May 18 letter that was filed with the Court.

In investigating whether RICO could be asserted against a law firm for normal legal services, LCS would also have known that "one is not liable under [§ 1962(c)] unless one has participated in the operation or management of the [RICO] enterprise itself," (*Reves v. Ernst & Young*, 507 U.S. 170 (1993)) and that the provision of legal services is "insufficient to meet the 'operation and management' test under *Reves*" (*Kashelkar v. Rubin & Rothman*, 97 F. Supp. 2d 383, 394 (S.D.N.Y. 2000)).  Thus, LCS knew or should have known that the RICO allegations against Haug Partners were frivolous.

In view of the deficiencies outlined above, as well as the multiple other grounds identified in Movants' Rule 12(b)(6) papers, LCS knew that its RICO allegations were unsupportable and frivolous.  Rule 11 sanctions therefore should be imposed.

### B.    An Award of Attorneys' Fees Is the Minimum Sanction Necessary to Deter Repetition

Under Rule 11, the court may issue "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).  However, "[a] sanction imposed under this rule must be limited to what

– 15 –

suffices to deter repetition of the conduct or comparable conduct . . . ." *Id.* Here, an award of attorneys' fees is warranted because the risk for repetition of LCS's frivolous claims is high.[5] This is especially so, given that LCS now seeks dismissal of the RICO claim ***without prejudice***, which demonstrates that it intends to bring this claim back in the future.

First, LCS was undeterred in bringing the present suit despite a strongly worded decision by Judge Gergel of the District of South Carolina, which explained that there was no harm from the IPR petition, and that Dr. Sanfilippo's suit—based on the same operative facts in this case— was "an ongoing, abusive use of legal process." *Sanfilippo*, 2017 WL 5591615, at *3. Judge Gergel even invited Dr. Brewerton to file for attorney fees against Dr. Sanfilippo. *Id.* In recent communications, LCS's counsel brushed off Judge Gergel's decision as merely "mis-branding" Dr. Sanfilippo and as casting mere "aspersions." ECF No. 41-1 at 2. This disregard for judicial decisions demonstrates that LCS is likely to continue its pattern of abusive use of legal process.

Second, Dr. Sanfilippo has multiple one-man companies through which he may attempt future bites at the litigation apple. After losing the IPR and South Carolina actions, Dr. Sanfilippo camouflaged himself in the guise of LCS Group—of which he has been the "sole Manager and Member . . . since the company was formed" (Amended Complaint ¶ 4)—in order to try a third time. Dr. Sanfilippo has at least one other one-man company, Lucerne Biosciences, LLC, which is alleged to have rights to the '813 patent. (Amended Complaint ¶ 9). The exclusion of Lucerne Biosciences, LLC from the South Carolina and present cases evidences an intent to file yet another action based on the IPR should Dr. Sanfilippo's present litigation efforts fail.

---

[5] To the extent the Court agrees that an sanction of reasonable attorneys' fees is appropriate, Movants respectfully request leave to file a separate submission detailing Movants' legal bills.

Third, LCS has sought "hundreds of millions" of dollars in damages (i.e., at least $200 million), to be trebled under LCS's RICO claim to a minimum of $600 million, if not higher. Given LCS's exaggerated damages claim, a sanction less than reasonable attorneys' fees would not serve as a sufficient deterrent to prevent Dr. Sanfilippo, individually or through one of his one-man companies, from commencing a fourth action concerning the '813 patent.

Finally, and perhaps most notably, LCS was informed that its claims were unsupportable and contrary to legal precedent on multiple occasions, including through this Court's pre-motion exchange of letters, pre-motion letters to the Court, and Movants' Rule 12(b)(6) Motion papers. Despite this notice and multiple opportunities to withdraw LCS's Amended Complaint, LCS failed to do so, in whole or in part, within the 21-day safe-harbor period, and has chosen to maintain or preserve all of its frivolous claims, demonstrating a disregard for the law and evidencing a high likelihood that such baseless and legally unsupportable claims will be resurrected at some unknown point in the future.

### C.      Sanctions Are Also Warranted Under 28 U.S.C. § 1927

This frivolous lawsuit also warrants sanctions under 28 U.S.C. § 1927.  LCS filed this meritless action despite being on notice of Judge Gergel's decision.  Moreover, after LCS was put on notice through pre-motion correspondence and a Rule 11 motion that the present action was groundless, LCS nevertheless forced Movants to incur the time and expense of moving to dismiss, and briefing the motion for sanctions.  LCS's insistence on pursuing this case without any colorable basis (despite multiple warnings) can only have been done in bad faith.  Therefore, sanctions should be imposed against LCS's attorney and law firm under § 1927.

**V.      Conclusion**

LCS has made clear that no action short of sanctions will prevent it from continuing to pursue meritless litigation regarding the '813 patent.  Therefore, for at least the reasons expressed above, Movants respectfully request that the instant motion for sanctions be granted.

Dated: September 7, 2018               Respectfully submitted,


                                         /s/ Porter F. Fleming, Esq.
                                         Porter F. Fleming
                                         **Haug Partners LLP**
                                         745 Fifth Avenue
                                         New York, New York 10151
                                         (212) 588-0800
                                         PFleming@haugpartners.com

                                         Attorneys for Defendants Shire LLC, Shire
                                         Development LLC, Shire plc, and
                                         Haug Partners LLP

**CERTIFICATE OF SERVICE**

On this 7th day of September, 2018, a true and correct copy of the foregoing

"Memorandum of Shire LLC, Shire Development LLC, Shire plc, and Haug Partners LLP in

Support of Motion for Sanctions" was served by CM/ECF and e-mail on Stephen Lobbin,

counsel for plaintiff LCS Group, LLC, and Tracy Lynn Cole, counsel for co-defendant Baker

Hostetler LLP.

/s/ Porter F. Fleming