USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/29/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LCS Group LLC,

                Plaintiff,

-against-

Shire LLC, et al.,

                Defendant.

1:18-cv-02688 (AT) (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, United States Magistrate Judge:**

Before the Court is a motion by Defendants Shire LLC, Shire Development LLC, Shire PLC[1] and Haug Partners LLP ("Haug Partners") (collectively, the "Defendants") for attorneys' fees to be awarded in the amount of $250,000. (ECF No. 80.) For the reasons set forth below, Defendants' motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

Shire is a pharmaceutical company that manufactures and sells Vyvanse, a drug used for the treatment of Attention-Deficit/Hyperactivity Disorder. *LCS Grp., LLC v. Shire LLC*, No. 18-CV-2688 (AT), 2019 WL 1234848, at *1 (S.D.N.Y. Mar. 8, 2019). Non-party Dr. Louis Sanfilippo, the sole member of LCS Group LLC, invented U.S. Patent 8,318,813 ("'813 Patent"), which relates to methods for the treatment of Binge Eating Disorder with the drug lisdexamfetamine dimesylate (*e.g.*, Vyvanse). *Id*. The '813 Patent was issued by the United States Patent and Trademark Office ("USPTO") in November 2012. *Id*. LCS owned the '813 Patent from issuance to 2015. *Id*. This dispute arises out of Shire's initiation of an *inter partes* review ("IPR") proceeding before the

---

[1] The Shire entities collectively are referred to herein as "Shire."

USPTO, challenging and ultimately cancelling all claims of the '813 Patent on June 4, 2015. *Id*. at *2. LCS had claimed that Shire's IPR petition "relied exclusively on a fraudulent declaration" prepared by Shire and Shire's counsel, Haug Partners, and signed by Timothy Brewerton, M.D., Shire's expert witness in the IPR proceeding. *Id*.

On January 20, 2017, Dr. Sanfilippo filed a *pro se* lawsuit in the United States District Court for the District of South Carolina against Dr. Brewerton, asserting state law claims for fraud, defamation and negligence, and alleging that the declaration in support of the IPR petition contained fraudulent misrepresentations in concluding that the claims of the '813 Patent were invalid. *Id*. On November 20, 2017, District Judge Richard Gergel dismissed Dr. Sanfilippo's complaint in its entirety, finding that Dr. Sanfilippo was "engaging in an ongoing, abusive use of legal process," and further that "he engaged in improper behavior." *Sanfilippo v. Brewerton*, No. 17-CV-00183 (RMG), 2017 WL 5591615, at *3 (D.S.C. Nov. 20, 2017).

On March 27, 2018, Stephen Michael Lobbin ("Lobbin"), then a partner at Foundation Law Group ("Foundation"), as attorney for LCS, filed the instant lawsuit against Shire arising from the same set of circumstances that were asserted in the District of South Carolina. (Compl., ECF No. 1.) On June 26, 2018, Lobbin filed a First Amended Complaint, adding as defendants law firms Haug Partners and Baker Hostetler LLP (LCS's prior law firm that had withdrawn during the course of the IPR proceeding), and asserting a civil RICO claim. (Am. Compl., ECF No. 27.)

On July 26, 2018, Defendants filed a motion to dismiss the First Amended Complaint. (Not. of Motion to Dismiss, ECF No. 38.) On September 7, 2018, Defendants filed a motion, pursuant to Federal Rule of Civil Procedure 11(c), seeking sanctions against LCS, Lobbin and Foundation. (Not. of Motion for Sanctions, ECF No. 47.)

By Order dated March 8, 2019, District Judge Analisa Torres dismissed all claims against the Defendants with prejudice and granted Defendants' motion for sanctions. *See LCS Grp., LLC*, 2019 WL 1234848, at *18. Judge Torres ordered LCS, Lobbin and Foundation "jointly and severally, to reimburse [Defendants] for their reasonable attorney's fees and other expenses associated with briefing the motion to dismiss and the motion for sanctions." *Id*. at **13, 18. Judge Torres instructed Defendants to file a motion for attorneys' fees if the parties were unable to reach agreement as to the amount to be paid by LCS, Lobbin and Foundation. *Id*. at *18.

On April 5, 2019, Defendants filed their motion for attorneys' fees and supporting papers.[2] (ECF Nos. 80-82.) In their motion, Defendants are seeking $250,000 in legal fees, but are not seeking any other expenses. (Defs.' Mem., ECF No. 81, at 6.) Among the papers submitted by Defendants were billing invoices for Haug Partners that contained certain redactions. (*See* Fleming Decl., Ex. 1, ECF No. 82-1.) Defendants' non-dispositive motion for attorneys' fees was referred to me on April 11, 2019. (Order of Reference, ECF No. 84.)

Lobbin filed opposition papers on April 19, 2019.[3] (Opp., ECF No. 85.) Lobbin argues that $15,000 would be an appropriate sanctions award. (Opp. at 3.) Lobbin's opposition papers included redacted copies of certain of his federal tax returns. (*See* Opp., Ex. A, ECF No. 85-2.) Although Foundation itself did not file an opposition, Lobbin's opposition papers included a Declaration in opposition from Gregg D. Zucker of Foundation, arguing that Foundation should

---

[2] The parties were unable to reach agreement regarding the amount of attorneys' fees to be paid. Defendants had been willing to accept a reduced amount (*i.e.*, $65,000) on certain conditions (including that Dr. Sanfilippo agree not to disparage the Defendants), but no agreement was reached. (*See* 4/4/19 Zucker email, ECF No. 85-6.)

[3] No opposition papers separately were filed by LCS itself.

not be responsible for any of Defendants' attorneys' fees. (Zucker Decl., ECF No. 85-5.) In a letter dated April 19, 2019, Lobbin requested oral argument (4/19/19 Ltr., ECF No. 86), which I granted and scheduled to take place on May 28, 2019. (4/22/19 Endorsement, ECF No. 87.)

By Order dated May 21, 2019, I directed Lobbin to certify that he had advised LCS of the May 28 oral argument date and of LCS's right to appear at the argument in person or by telephone. (5/21/19 Order, ECF No. 88.) Such certification was provided by Lobbin by Declaration dated May 23, 2019.[4] In my May 21 Order, I also directed Defendants to supply to the Court for its *in camera* review copies of its billing invoices that were not redacted. (*See* 5/21/19 Order.) Such unredacted invoices timely were supplied to the Court, and shall be filed with the Clerk of Court under seal. (See 5/29/19 Order, ECF No. 91.) Finally, in my May 21 Order, I directed Lobbin to supply to the Court copies of his tax returns that were not redacted. (*See* 5/21/19 Order.) Such unredacted tax returns timely were supplied to the Court, and shall be filed with the Clerk of Court under seal. (5/29/19 Order.)

Oral argument was held on May 28, 2019, at which Defendants' counsel and Lobbin appeared. Dr. Sanfilippo appeared in person and testified regarding LCS's financial condition. No one appeared on behalf of Foundation.[5]

---

[4] The Court filed Lobbin's May 23 Declaration on the ECF docket in this case. (*See* 5/23/19 Lobbin Decl., ECF No. 89.)

[5] After the oral argument was concluded, Foundation submitted a letter, though Lobbin, stating Foundation's understanding that "the points [they] raised [in the Opposition and Zucker Declaration] would be addressed at the hearing." (5/28/19 Ltr., ECF No. 90.) Those points in fact were addressed at the hearing.

4

**DISCUSSION**

**I.      Legal Standards**

Judge Torres' Order directed the payment by LCS, Lobbin and Foundation of Defendants' "reasonable attorney's fees and expenses." *See LCS Grp., LLC*, 2019 WL 1234848, at \*\*13, 18. The Court "enjoys broad discretion in determining the amount of a fee award." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 307 (2d Cir. 2011). In order to determine reasonable attorneys' fees in this case, the Court first will consider the lodestar approach to establish a "presumptively reasonable fee" by calculating the number of hours reasonably expended by counsel on the litigation and multiplying that number of hours by reasonable hourly rates. *See Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation marks omitted).

To determine the reasonable hourly rate, the Court's analysis is guided by the market rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Generally, the relevant community is the district in which the district court sits. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The Court is to evaluate the "evidence proffered by the parties" and may take "judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Farbotko v. Clinton County of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005).

In making its determination, the Court "examines the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997). A court-awarded attorneys' fee must compensate only for "hours reasonably expended on the litigation," not for "hours that are

5

excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). If the number of hours recorded by counsel is disproportionate to the work performed, the Court should reduce the stated hours in making its fee award. *See id*. at 433.

In addition, "[i]n awarding attorney's fees as a sanction, the Second Circuit has cautioned that a court should consider the financial circumstances of the sanctioned party." *Bowler v. U.S. I.N.S.*, 901 F. Supp. 597, 606 (S.D.N.Y. 1995) (citing *Sassower v. Field*, 973 F.2d 75, 81 (2d Cir. 1992), *cert. denied*, 507 U.S. 1043 (1993)); *see also Mantell v. Chassman*, 512 Fed. App'x 21, 24 (2d Cir. 2013) (district court "erred by failing to consider [the sanctioned attorney's] financial hardship argument in calculating an appropriate sanction.").

Finally, the determination of fees "should not result in a second major litigation." *Hensley*, 461 U.S. at 437. Indeed, "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

## II. <u>Application</u>

The Court carefully has reviewed Defendants' motion, together with their counsel's time records, as well as Lobbin's opposition papers, and concludes in its discretion that a reduction in the fees sought by Defendants is appropriate, as explained below.

### A. Hourly Rates

The Court finds from relevant case law,[6] and from its own experience litigating in this District, that the rates sought by Defendants are reasonable, but makes certain adjustments. For hours billed in June and July 2018, a discount of 17.5% was applied to Haug Partners' hourly rates; for hours billed in August and September 2018, a discount of 20% was applied; and for hours billed in October 2018, a discount of 22.5% was applied. (*See* Defs.' Mem. at 6; Fleming Decl., Ex. 1.) The Court, in its discretion, shall apply a 22.5% discount to Haug Partners' hourly rates across the board. This results in an hourly rate for partner Porter F. Fleming of $868.00 (*i.e.*, 77.5% of $1,120.00 per hour standard hourly rate), and an hourly rate for associate Jonathan Herstoff of $449.50 (*i.e.*, 77.5% of $580.00 per hour standard hourly rate).[7] (Defs.' Mem. at 6; Fleming Decl., Ex. 1.)

### B. Number of Hours

In determining the reasonableness of hours expended for fee-shifting purposes, there is a balance to be struck between principles of thoroughness and efficiency. Indeed, what one party finds to be thorough in the defense of a lawsuit may seem to the other party to be excessive. In the present case, the unredacted invoices supplied to the Court by Haug Partners reflect that ten timekeepers billed hours to this case during the period June to October 2018 and that discounted

---

[6] *See, e.g.*, *MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*, 16-CV-8103 (LGS), 2017 WL 1194372, at *3 (S.D.N.Y. March 30, 2017) (approving as reasonable hourly rates $569.02 to $753.42 for associates and $874.60 to $1,048.47 for partners).

[7] As set forth below, the Court finds that only the hours of a single associate were needed to effectively represent Haug Partners' client, Shire. Thus, the Court does not consider the 84.5 hours billed by associate Jason Kanter for which Defendants sought reimbursement. (*See* Defs.' Mem. at 6.)

fees well in excess of the $250,000 they are now seeking were billed during that period.[8] To their credit, Defendants only are seeking to recover $250,000 from LCS, Lobbin and Foundation as sanctions, for hours billed by partner Porter Fleming and associates Jonathan Herstoff and Jason Kanter. (Defs.' Mem. at 6.) Specifically, Defendants are seeking to recover 151.6 hours for Fleming, 302.6 hours for Herstoff and 84.5 hours for Kanter. (*Id*.)

Although having more than one associate work on the motion to dismiss and the motion for sanctions may have brought value to the client, the Court finds that it is not reasonable to pass along to LCS, Lobbin and Foundation the cost of having more than one associate work on the motion to dismiss and motion for sanctions. Based upon the Court's review of the time entries, much of the work done by the two associates overlapped. Thus, the Court, in its discretion, only will credit the hours of partner Fleming and associate Herstoff.

A close examination of the time entries by Fleming and Herstoff for which Defendants seek reimbursement, as well as the relevant motion papers that were filed, reveals these attorneys billed hours that are in excess of what the Court finds to be objectively reasonable.[9] During the three-month period from late June until late September 2018, there are 27 entries by Herstoff alone that are in excess of eight hours per day. The moving memorandum filed on behalf of Defendants regarding the motion to dismiss consisted of 30 pages (ECF No. 39) and the reply memorandum consisted of 15 pages. (ECF No. 43.) The moving memorandum filed on behalf of

---

[8] Defendants represented at oral argument that all the amounts billed by Haug Partners were paid by Shire.

[9] The Court wishes to emphasize that clients of course are free to instruct their attorneys to leave no stone unturned and to go above and beyond in order to achieve results. Some clients are tolerant of—and indeed may encourage—their attorneys to bill greater hours than other clients might accept. However, it is incumbent on the Court to discern that which is objectively reasonable.

the Defendants on the motion for sanctions consisted of 18 pages (ECF No. 48) and the reply memorandum consisted of 14 pages. (ECF No. 58.) Although the legal arguments regarding the RICO claims were somewhat complex, the other legal arguments were not. Moreover, although the attorneys needed to review relevant procedural histories from two prior litigations, the motions were made on the pleadings and there was not an extensive factual record that needed to be reviewed and digested. Thus, the Court finds that a reduction in the number of hours billed by Fleming and Herstoff is warranted.

A court may apply an across-the-board reduction to effectuate the reasonable imposition of fees. *See*, *e.g.*, *Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 389 (S.D.N.Y. 2000) ("[R]ather than reducing a certain number of unreasonably billed hours, the [c]ourt will make an across-the-board percentage cut in [the] plaintiffs' fee award as is necessary and appropriate."); *see also Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 656-57 (S.D.N.Y. 2019) (employing a 66% reduction in the hours for two attorneys and 70% for another in matter that went to trial). In its discretion, in order to arrive at the reasonable number of hours spent in connection with Defendants' motion to dismiss and motion for sanctions, the Court reduces by 50% the hours of Fleming and Herstoff for which reimbursement was sought by Defendants. Thus, the Court credits 75.8 hours for Fleming (*i.e.*, one-half of 151.6) and 151.3 hours for Herstoff (*i.e.*, one half of 302.6). The Court finds that this achieves "rough justice" regarding the hours reasonably spent in connection with two pre-discovery motions. *See Fox*, 563 U.S. at 838.

Applying the reasonable hourly rates set forth above, the lodestar amount due to Defendants is $133,803.75.[10]

**C. Ability to Pay**

The sanctions awarded by Judge Torres in this case are against LCS, Lobbin and Foundation, jointly and severally. However, LCS is a limited liability company that Defendants acknowledged appeared to have little or no assets. (*See* Defs.' Mem. at 7.) Dr. Sanfilippo confirmed under oath at the hearing that LCS has no assets with which to satisfy a fee award in this case. Thus, payment of the sanctions likely will fall to Lobbin and Foundation.

In his opposition papers, Lobbin argues that $15,000 "is the most that [he] could reasonably afford to pay." (Lobbin Decl., ECF No. 85-1, ¶ 7.) The Court has reviewed *in camera* unredacted copies of Lobbin's federal tax returns. Although it *may* be the case that Lobbin does not alone have the ability to pay the entire $133,803.75 lodestar amount,[11] no information was provided regarding the financial condition of Foundation. Thus, no showing has been made that Lobbin and Foundation together are unable to pay the lodestar amount.

**D. Foundation's Joint Responsibility for Sanctions**

Foundation in its submissions suggests that Foundation should not be responsible for payment of any of the sanctions awarded by Judge Torres due to Foundation's "lack of

---

[10] $868.00 x 75.8 (Fleming) + $449.50 x 151.3 (Herstoff) = $133,803.75.

[11] The Court notes, however, that—as Defendants pointed out during argument—Lobbin recently received as part of a settlement close to $200,000, *see Eclipse Group LLC v. Target Corp.*, No. 15-CV-01411 (JLS) (BLM), 2018 WL 4680006, at *3 (S.D. Cal. Sep. 29, 2018), which could be used towards payment of the sanctions here.

involvement in the case." (*See* 5/28/19 Ltr.) Foundation asserts that it "had no intent to engage in any culpable conduct, and Foundation engaged in no such conduct. (Zucker Decl. ¶ 4.)[12]

With respect to Foundation's responsibility to pay monetary sanctions in this case, District Judge Torres made explicit reference to the language of Rule 11(c)(1) of the Federal Rules of Civil Procedure. *See LCS Grp., LLC*, 2019 WL 1234848, at *14. Rule 11(c)(1) provides: "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11(c)(1). *See Catton v. Defense Technology Systems Inc.*, 541 Fed. App'x 25, 28 (2d Cir. 2013) (citing Fed. R. Civ. P. 11(c)(1)); *see also Cardona v. Mohabir*, 14-CV-1596 (PKC), 2014 WL 1804793 at *6 (S.D.N.Y. May 6, 2014) ("Imposition of the sanction upon the lawyer's firm is mandatory '[a]bsent exceptional circumstances' and none have been shown.").[13]

Judge Torres already found that Foundation is jointly responsible for Lobbin's conduct. *LCS Grp., LLC*, 2019 WL 1234848, at *18. Even if this Court were called upon to revisit that finding—which it is not—there is no basis in the record to suggest that exceptional circumstances

---

[12] Foundation is a California-based law firm "composed primarily of corporate attorneys handling contract and license drafting matters and patent/IP prosecution," that also has three litigation attorneys. (Zucker Decl. ¶ 3.) Lobbin worked at Foundation for "fewer than eight months in 2018." (*Id*. ¶ 2.) Zucker asserted that Lobbin was the only Foundation lawyer who worked on this case; that Foundation had no role in the decision to bring the RICO claim; and that "[w]ithin weeks of learning of this action, Foundation terminated Mr. Lobbin." (*Id*. ¶¶ 2-4.)

[13] Rule 11 was amended in 1993 to require the imposition of sanctions upon the law firm where the offending attorney was employed, unless exceptional circumstances were shown. *See* Fed. R. Civ. P. 11 Advisory Committee's note to 1993 Amendments ("This provision [Rule 11(c)(1)]is designed to remove the restrictions of the former rule," which did "not permit sanctions against law firm of attorney signing groundless complaint.").

exist here. The record reflects that Lobbin submitted numerous filings in this case in his capacity as partner at Foundation.[14] He signed pleadings and other submissions in this case on behalf of the firm, and was extensively involved in the case while a partner at the firm. (*See*, *e.g.*, ECF Nos. 1, 18, 19, 20, 41, 51, 59-7, 64.) Moreover, during his tenure at Foundation, Lobbin was counsel of record in two other cases where sanctions were awarded (in one case against him and in one case against his client) under Federal Rule of Civil Procedure 37: *Nutrition Distribution LLC v. PEP Research, LLC*, 16-CV-2328 (WQH) (BLM) (S.D. Cal.) and *Daimler AG v. A-Z Wheels LLC*, 16-CV-875 (JLS) (MDD) (S.D. Cal.).[15] Under these circumstances, Foundation cannot evade its joint responsibility to pay sanctions, as previously ordered by District Judge Torres.

### E. Sanctions Awarded

Considering all the relevant factors under applicable law, the Court determines in its discretion that an award of sanctions in the lodestar amount of $133,803.75 is warranted and will achieve an appropriate and adequate deterrent effect.

Aside from his purported inability to pay sanctions greater than $15,000 (discussed *supra*), the principal thrust of Lobbin's opposition to the sanctions sought by Defendants was that "a $15,000 award is more than enough to accomplish deterrence," which Lobbin argues is "the purpose of imposing Rule 11 sanctions." (*See* Opp. Mem. at 2-3.) On the record before the Court, the Court finds that a five-figure award is not an adequate deterrent.

The Court is troubled by what it views as Lobbin's effort to mislead the Court as to his history regarding sanctions. In his sworn declaration, he states that "no court has ever imposed

---

[14] Lobbin admitted at the hearing that he was a partner at the Foundation firm.

[15] These cases, which Lobbin failed to disclose to the Court, are further discussed below.

Rule 11 sanctions on [him] or any of [his] clients," and that he has "never been in the very difficult position [he is] in now before this Court." (Lobbin Decl. ¶ 3.) However, as Lobbin confirmed during the hearing upon questioning by the Court, he was sanctioned under 28 U.S.C. § 1927 once and under Federal Rule of Civil Procedure 37 on three separate occasions (and his client was sanctioned on another occasion under the same rule):

First, in *Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc.*, No. 09-CV-01091 (JNE) (JSM), 2013 WL 3833065 (D. Minn. July 23, 2013), Lobbin; his then-law firm, Eclipse Group; and his client, Manley Toys, Ltd., were sanctioned in the amount of $20,540.50, pursuant to Fed. R. Civ. P. 37 and 28 U.S.C. § 1927, for producing ill-prepared 30(b)(6) witnesses in Hong Kong on multiple occasions. *Id*. at **3-8. The court found that Lobbin exhibited a "reckless disregard of his duties to the court." *Id*. at *3. In defense to the sanctions motion, Lobbin had cited his "honorable credentials," "unblemished 18-year professional record" and "reasonable personal and professional disposition." *Id*.

A second case, *Eclipse Group LLC v. Target Corp.*, No. 15-CV-01411 (JLS) (BLM), 2017 WL 2103573 (S.D. Cal. May 12, 2017),[16] arose out of a lawsuit for attorneys' fees where Lobbin, as intervenor, claimed to be due 60%. *Id*. at *2. There, Lobbin refused to attend a deposition, but was compelled to do so. He was required to pay sanctions under Rule 37 in the amount of $2,992.50. *Id*. at **4-5. The court found that Lobbin's "actions 'impeded, delayed, or frustrated the fair examination of the deponent.'" *Id*. at *5. Thereafter, Lobbin's motion for reconsideration was denied. 2017 WL 2909717 (S.D. Cal. July 6, 2017).

---

[16] This is the same lawsuit in which Lobbin recently received close to $200,000 in legal fees as a result of a settlement. *See* n.11, *supra*.

Third, in *Nutrition Distribution LLC v. Pep Research, LLC*, No. 16-CV-02328 (WQH) (BLM), 2018 WL 3769162 (S.D.Cal. Aug. 9, 2018), while Lobbin was a partner at Foundation, Lobbin and his client were sanctioned by a Magistrate Judge under Rule 37 for not producing a prepared 30(b)(6) witness and were ordered to pay the costs and fees associated with a second deposition *Id*. at *6. In addition, Lobbin and his client were sanctioned under Rule 37 in the amount of $14,835.40 for failing to comply with several parts of the court's previous discovery order. *Id*. at **13-14. The District Judge overruled Lobbin's objections in relevant part. *Id*.

Fourth, in *Daimler AG v. A-Z Wheels, LLC*, No. 16-CV-00875 (JLS) (MDD), 2018 WL 3413863 (S.D. Cal. Apr. 23, 2018), although Lobbin himself was not sanctioned, Lobbin's clients, Ryan and Joshua Moalemi, were sanctioned under Rules 26 and 37 in the amount of $27,456.22 for failing to comply with a discovery order. *Id*. at **1, 3. In *Daimler*, while Lobbin was a partner at Foundation, Lobbin's clients had been ordered in September 2017 to produce documents or be subject to sanctions, but failed to comply. *Id*. at *1. Daimler filed its motion for sanctions in December 2017. *Id*.[17]

During the hearing, Defendants called to the Court's attention a case where Lobbin was under threat of Rule 11 sanctions before the case settled, *MOBE, Ltd. v. Digital Altitude LLC*, No. 16-CV-5708 (PA) (KSX), 2017 WL 3579492 (C.D. Cal. June 27, 2017). In that case, Lobbin was one of the counsel for the defendants, which had made an *ex parte* application "filed with dubious support for its factual assertions and resulting legal conclusions." *Id*. at *3. Lobbin had submitted one of the Declarations in support of the application. *Id*. The court ordered defendants to "to

---

[17] Lobbin's request to be relieved as counsel for these clients was granted thereafter, on March 27, 2018. *Daimler AG v. A-Z Wheels, LLC*, No. 16-CV-00875 (JLS) (MDD), 2018 WL 3413862 (S.D. Cal. Mar. 27, 2018).

show cause, in writing, why they should not be sanctioned, either under Rule 11 or the Court's inherent authority, for filing the Ex Parte Application." *Id*. at *4. The case was settled in October 2017, before a decision was made regarding sanctions. (*See MOBE, Ltd v. Digital Altitude LLC*, C.D. Cal., 16-CV-5708, ECF No. 191.)

In view of all the foregoing cases, the Court finds that Lobbin's statements in his Declaration that "no court has ever imposed Rule 11 sanctions on [him] or any of [his] clients," and that he has "never been in the very difficult position [he is] in now before this Court" (Lobbin Decl. ¶ 3) were designed to mislead the Court. In these circumstances, the Court finds that a six-figure sanction is needed in order to have an adequate deterrent effect.

With respect to Foundation, the fee award shall serve as a reminder to out-of-state firms with attorneys providing legal services in the State of New York that they have an obligation to monitor the conduct of those attorneys. Rule 5.1 of the New York Rules of Professional Conduct require law firms to "ensure that the work of partners and associates is adequately supervised, as appropriate." N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0, Rule 5.1.[18]

---

[18] Since this Court sits in the State of New York, under choice of law rules, the New York Rules of Professional Conduct govern, even though Foundation is based in California. *See* CA ST RPC Rule 8.5; *see also* 7A Cal. Jur. 3d, Attorneys at Law § 330 ("The [California] rules govern the activities of members in and outside the state, except as members lawfully practicing outside this state may be specifically required by a jurisdiction in which they are practicing to follow rules of professional conduct different from the California rules").

## CONCLUSION

For the foregoing reasons, Defendants' motion for attorneys' fees (ECF No. 80) is GRANTED IN PART and DENIED IN PART. LCS Group, LLC, Stephen Lobbin and Foundation Law Group LLP, jointly and severally, are hereby ordered to pay the sum of $133,803.75 to Defendants.

Dated: New York, New York
May 29, 2019

**SO ORDERED**.

_____
**STEWART D. AARON**
**United States Magistrate Judge**