IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LCS Group, LLC**,<br><br>   Plaintiff,<br><br>   v.<br><br>**Shire LLC**, et al.,<br><br>   Defendants. | Civil Case No. 1:18-cv-02688-AT-SDA<br><br>**OBJECTIONS TO REPORT AND RECOMMENDATION** |

Pursuant to this Court's recent Order (*see* ECF No. 110 at 3), the undersigned counsel respectfully submits for the Court's favorable consideration the following objections to the Report and Recommendation of the Magistrate Judge (*see* ECF No. 106).[1]

## I.   Preliminary Statement

Counsel has read and re-read this Court's March 8, 2019 Order, many times. *See* ECF No. 75. After a 25-year, intense, sometimes stressful, and largely successful patent and IP litigation career, counsel is personally embarrassed and

---

[1] These objections are submitted on behalf of the undersigned counsel—Mr. Lobbin—as well as his former law firm, Foundation Law Group, LLP. As of June 2019, counsel was terminated by Plaintiff LCS Group LLC, in favor of its Connecticut attorney. LCS remains unrepresented in this action. *See* ECF Nos. 77 and 79 (noting conflict disqualification and withdrawal); ECF No. 106 at 7 n.3 ("No opposition papers [on sanctions motion] separately were filed by LCS itself."); ECF No. 109 (referring motions to withdraw as non-dispositive).

1

chastened. Counsel implores this Court to accept this sincere apology. Counsel also has apologized directly to Defendants, their counsel, and the Magistrate Judge.

The impact of this case on counsel has been profound. After many years with large and mid-sized law firms, counsel now has a very small firm and is the sole provider for a family of four, including two young children, ages 9 and 6. Counsel has taken to heart this Court's expressed exasperation with the admittedly flawed presentation of Plaintiff's First Amended Complaint. It was a mistake to have pled anything more than a simple, straightforward, single count asserting breach of contract.[2] Counsel's over-pleading mistake was not the result of a general professional defect, justifying severe deterrence. Instead, counsel's lapse of good judgment resulted from his 30+ year, close personal friendship with Plaintiff's principal, Dr. Sanfilippo, going back to college.

In 2017, Dr. Sanfilippo asked for help because he had nowhere else to turn after losing his wife in her 40s to cancer, and losing his financial resources in trying to defend his valuable patent from Defendants' invalidity challenge, all

---

[2] The Court dismissed the breach of contract claim primarily because Paragraph 5 of the CDA agreement at issue "specifically exempts from its scope any information 'publicly known at the time of the disclosure.'" Paragraph 7 of the CDA (which Plaintiff asserted exclusively), however, actually prohibits publicity "in addition to the confidentiality obligations set forth in this Agreement," which renders the "publicly known" confidentiality exemption inapplicable, particularly under the deferential Rule 12(b)(6) standard. The Court's contract interpretation was not "in the light most favorable to" Plaintiff, including because it ignored the express prohibition found in Paragraph 7.

during the same short period of time in 2014-2015.  Dr. Sanfilippo believed he had been treated unfairly by Defendants under the parties' 2013 CDA cooperation agreement.  Soon after the CDA was signed, Defendants turned around and attacked the patent in 2014, at the same time they knew Dr. Sanfilippo was consumed with desperately caring for his dying wife and their two young children.  Despite these tragic circumstances, counsel nevertheless should not have allowed his human empathy and strong emotions resulting from his friendship to affect his professional judgment in pleading this action.  The circumstances were personal and heartfelt for counsel, but were unique.  Counsel's lapse in good judgment will not happen again.[3]

    Since this Court's March 2019 dismissal, which included the directive for the parties to "confer in an effort to reach agreement" on a reasonable sanctions amount, counsel has repeatedly implored Defendant Shire to accept an amount counsel is reasonably able to pay (including offers of as much as $50,000.00, perhaps to one of Shire's charities).  Mutual friends and colleagues who were Shire employees have inquired as well, to no avail.  In response to these many requests, Shire—which was acquired by Takeda Pharmaceuticals in 2019 for about $62

---

[3] Counsel is fortunate to have colleagues such as Thomas Canova, a longtime IP litigation attorney in this District who has confirmed to this Court the general good ethics and integrity of the undersigned counsel.  *See* ECF No. 85-4 at 1-3.

3

billion—has flatly refused (since June 2019) even to discuss any possible resolution whatsoever.

## II. Objection: The Magistrate Judge Overlooked The Required Deferential Standard Of Review

Particularly given the extraordinarily crippling amount of sanctions imposed, counsel believes the Magistrate Judge overlooked that the relevant facts and considerations on a Rule 11 motion—as on a Rule 12 motion—must be assessed "in the light most favorable to" the non-movant, resolving every doubt and drawing every inference in its favor, not against it. *See, e.g.*, ECF No. 85 at 2 (citing *Joint Stock Co. v. Infomir LLC*, No. 16-1318, 2017 WL 8723937, at *5 (S.D.N.Y. Oct. 19, 2017) ("[The] Second Circuit has instructed the district courts to . . . resolve all doubts in favor of the party against whom sanctions are sought.")); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) (Rule 12(b)(6) motion).

For example, the Magistrate Judge concluded that counsel "may . . . alone have the ability to pay the entire $133,803.75 lodestar amount," and that an unrelated "settlement close to $200,000 . . . could be used towards payment of the sanctions here." ECF No. 106 at 14. These unfavorable inferences are not true. *See infra* Part III. Moreover, assessing counsel's financial information in a favorable light should have compelled the conclusion that $133,803.75 in sanctions

4

is largely punitive and entirely unbearable as a practical matter for the undersigned counsel (or most any individual) ever to satisfy.

### III. Objection: The Magistrate Judge Overlooked The Required Nexus To Individual Conduct

The Magistrate Judge also overlooked that the relevant "deterrence" and "ability to pay" considerations should bear a close nexus to the sanctioned individual attorney primarily (if not exclusively), not including his former law firm.  *See* ECF No. 85 at 2 (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1281 (2d Cir. 1986)) ("[T]he court should temper the amount imposed based on a transgressor's ability to pay."); *see also* ECF No. 75 at 36 (sanctions amount "must be limited to what suffices to deter repetition") (quoting Fed. R. Civ. P. 11(c)(4)); *Eastway Const. Corp. v. City of N.Y.*, 821 F.2d 121, 123 (2d Cir. 1987) (court should "award only that portion of a defendant's attorney's fee thought to be reasonable to serve the sanctioning purpose of the Rule") (citations omitted); *Schottenstein v. Schottenstein*, No. 04-5851, 2005 WL 912017, at *2 (S.D.N.Y. Apr. 18, 2005) ("[B]ecause the purpose of imposing Rule 11 sanctions is deterrence, a court should impose the least severe sanctions necessary to achieve the goal.") (emphasis added).[4]

---

[4] For example, in *Bonded Life Fund, LLC v. AXA Equitable Life Ins. Co.*, No. 13-5451, 2014 WL 1329234, at *1-4 (S.D.N.Y. Apr. 1, 2014), this Court evaluated defendants' request for $30,576.60 in fees (at hourly rates of $575 and $420) incurred in connection with a motion to dismiss and Rule 11 motion, like the

A law firm's liability typically is only vicarious under Rule 11, which should render the law firm's vastly greater "ability to pay" of little relevance to the amount of sanctions reasonably assessed, for example. As the 1993 Advisory Committee Notes to Rule 11 explain:

> [W]hat amount, **given the financial resources of the responsible person, is needed to deter that person** . . . [is] subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct **by the offending person** or comparable conduct by similarly situated persons.
>
> . . .
>
> The person signing, filing, submitting, or advocating a document has a nondelegable responsibility to the court, and in most situations is the person to be sanctioned for a violation. Absent exceptional circumstances, a law firm is to be held also responsible . . . [but] it is appropriate that the law firm ordinarily be viewed as **jointly responsible [only] under established principles of agency**.

*Id.* (emphasis added).

As the Supreme Court has explained, "[D]eterrence arises from the signer's knowledge that the sanction will not be diverted even partly to the associated firm," and by logical extension, that the amount of the sanction will be specifically

---

instant action. Although the hours and rates were deemed acceptable, and the justification for the dismissal in question "was not a close call," the Court reduced the fee award to $20,000. The Court reasoned that the case was "short-lived" and that "awarding defendant's full amount of fees incurred would be more than is necessary to sufficiently deter similar such conduct in the future." *Id.* at *3; *see also Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, No. 07-3208, 2010 WL 4878955, at *1 (E.D.N.Y. Nov. 23, 2010) (amount of sanctions reduced "based upon . . . the showing of financial hardship . . . and the limited purposes of Rule 11 sanctions"). The same limiting considerations are present here.

6

tailored to counsel's particular, personal financial circumstances and reasonable ability to pay. *See Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120, 127 (1989). Therefore, in setting such an extraordinarily punishing amount here, the Magistrate Judge excused somewhat Defendants' principal burden as the movant, and weighed unfavorably and excessively the facts that "no information was provided regarding the financial condition of Foundation" and "no showing has been made that Lobbin and Foundation together are unable to pay." ECF No. 106 at 14.[5]

The Magistrate Judge correctly noted that it "should consider the financial circumstances of the sanctioned party," and must "consider [the sanctioned attorney's] financial hardship argument." ECF No. 106 at 10 (citations omitted). But the Magistrate Judge proceeded to award an amount which is close to the maximum total yearly taxable income of the undersigned counsel in any of the last 5 years. *See* ECF No. 85-1 at 3 (confirming also that counsel "would have to finance the amount and pay it back over time"). Taxable income, of course, is the

---

[5] If it were otherwise (as the Magistrate Judge mistakenly applied), the limitation of deterrence under Rule 11 would be illusory for all but the tiniest of law firms. For example, if the undersigned counsel still worked for a 1,000-lawyer firm such as his former Foley & Lardner, what enormous amount of sanctions would be necessary to deter the law firm (with a practically unlimited ability to pay)? This distinction is critical, because a reasonable sanction based on the entire law firm's ability to pay (such as the $133,803.75 ordered here) is many multiples higher than a reasonable sanction based on the individual attorney's ability to pay (but for which the law firm may remain liable vicariously, as Rule 11 allows).

7

entire pool of disposable income available to pay all personal expenses, including income taxes and food, clothing and shelter for counsel's wife and two children.

Further, the Magistrate Judge speculated unfavorably that counsel "may . . . alone have the ability to pay the entire $133,803.75 lodestar amount," and that "a settlement close to $200,000 . . . could be used towards payment of the sanctions here." ECF No. 106 at 14. As evidenced by counsel's tax returns—reviewed in the light most favorable and "resolving all doubts in favor of the party against whom sanctions are sought"—clearly counsel has no ability to pay the assessed sanctions alone. *See* ECF 85-1 at 3, Ex. A. Concerning the settlement, not only was the amount actually collected less than $130,000, but the collection represents only part of counsel's long past, unpaid income from 2012-2014, which counsel had to replace over the last 5+ years with personal debt (plus interest), in order to support his family. All of the settlement money collected has been gone since just after it was collected in 2018, so in fact none of it could be used towards payment of the sanctions here.

### IV. Objection: The Magistrate Judge Overlooked This Court's Prior Review Of Counsel's Past Discovery Sanctions

The Magistrate Judge also overlooked that the past discovery sanctions history of counsel already had been assessed by this Court, and also should have been of limited relevance. During the briefing in 2018 on Defendants' motions, they raised (and Plaintiff rebutted) the same prior arguments and circumstances.

8

*See* ECF No. 58 at 16-18; ECF No. 64 at 4-5.  In rebuttal (in part), counsel explained as follows to this Court in October 2018:

> Shire improperly ranges far beyond the point of the Lobbin Declaration, which accurately states unequivocally true facts demonstrating an honest record under the unique, high threshold of Rule 11 that this Court can assess for itself.  *See* ECF No. 52 at 2.  Shire seeks to disparage counsel with examples of an order to show cause (but no sanctions) from a notoriously tough judge, and discovery sanctions against represented parties (and counsel only jointly and severally) resulting from fairly ordinary discovery disputes, neither of which is analogous.  Shire's exhaustive research demonstrates only a vibrant litigation practice in the federal courts (with some clients more reliable than others), not any reason supporting Rule 11 sanctions in this particular (and very different) circumstance.  In fact, this Court should specifically note the impropriety and irrelevance of Shire's character attacks on the undersigned counsel.  *See, e.g.*, Fed. R. Evid. 404(b)(1) ("Evidence of . . . [an] other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

*Id.*[6]  Based on this Court's review of these briefs and evidence, the Court already rendered its own assessment of the "other sanctions" issue by not mentioning it at all in its 38-page, March 2019 decision on the motions.  *See* ECF No. 75.

As such, it was unfair for the Magistrate Judge to change course on this issue, this time in the most unfavorable light possible for Plaintiff and counsel, resulting in a significant punitive sanction well beyond proportionate deterrence.

---

[6] The Magistrate Judge decided there was an "intent to mislead" and a "failure to disclose," but in fact there was neither.  The issue was fully briefed and argued to this Court in 2018 on the motion to dismiss, and this Court did not make any such findings.

*See* ECF No. 106 at 19 ("In these circumstances [of the prior sanctions], the Court finds that a six-figure sanction is needed . . . .").

### V. Objection: The Magistrate Judge Overlooked The Conduct Of The Conferral Process

The Magistrate Judge also overlooked Defendants' lack of good faith during the conferral process, which made a fair resolution of the sanctions amount impossible. In its March 2019 Order, this Court "instructed Defendants to [meet and confer in good faith] to reach agreement as to the amount to be paid by LCS, Lobbin and Foundation." ECF No. 106 at 7 (good faith implied, if not stated explicitly). The Magistrate Judge also noted that "Defendants had been willing to accept a reduced amount (*i.e.*, $65,000) on certain conditions (including that Dr. Sanfilippo agree not to disparage the Defendants), but no agreement was reached." ECF No. 106 at 7 n.2. But the Magistrate Judge overlooked the import of the fact that Dr. Sanfilippo is not a party to this action.

Because of Dr. Sanfilippo's status as a non-party, Defendants had no good faith basis to demand Dr. Sanfilippo's "total silence" as a condition precedent to any agreement on an amount of sanctions payable by Plaintiff and counsel.[7]

---

[7] Defendants have claimed their proposed settlement terms "merely sought Dr. Sanfilippo's assurances that he would not . . . engage in any activity that would have the effect of disparaging, defaming, or discrediting [Defendants]." But obviously, this provision would allow Defendants to sue Dr. Sanfilippo in the future for just about anything he said or wrote mentioning "Shire" or "Haug" or any of their people. *See* ECF No. 85-6 at 6.

10

Defendants unfairly set up this unreasonable condition as deal breaker from the start.  The only reasonable inference from Defendants' demand—*i.e.*, that Dr. Sanfilippo sign away broadly his freedom of expression—is that it was an intentional "poison pill" making any agreement on an amount of sanctions impossible.  It worked foreseeably, because the sanctioned parties—Plaintiff and counsel—could not convince Dr. Sanfilippo to participate in a settlement of litigation to which he is not a party individually, much less sign away his constitutional free speech rights.  Defendants' insertion of this "poison pill" in the Court-ordered discussions violated the good faith necessarily mandated by this Court's March 2019 Order.  This conduct should have been weighed significantly in the equitable balance of this Magistrate Judge's ultimate determination of an appropriate amount of sanctions.

### VI.     Objection:  The Magistrate Judge Overlooked Counsel's Underlying Conduct In (At Least Subjective) Good Faith

The Magistrate Judge also overlooked that the amount of any Rule 11 sanction must be proportionate to the degree of the misconduct sanctioned, which must be assessed in comparison to the total sanctions amount.

Concerning the RICO issue, the Magistrate Judge overlooked Plaintiff's representation made within the Rule 11(c)(2) "safe harbor" period that "we are planning to dismiss that claim." *See* ECF No. 64 at 2.  Plaintiff's cited cases such as *Payer* and *Upek* (without any contrary authority) validate the fact that Plaintiff

11

timely withdrew the RICO claim within the parties' agreed 8-day extension of the "safe harbor." *See* ECF No. 85 at 4 (citing *Payer* and *Upek*) ("The Rule 11 safe harbor provision, by its plain language, does not require that a party drop its claims with prejudice."); *see also* ECF No. 64 at 2-3 (explaining Plaintiff's withdrawal of the RICO claim within the parties' agreed 8-day extension of the "safe harbor" period). The 1993 Advisory Committee Notes confirm that the "safe harbor" should be applied liberally:

> If, during this period, the alleged violation is corrected, as by withdrawing (whether formally or informally) some allegation or contention, the motion should not be filed with the court. These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that . . . the timely withdrawal of a contention will protect a party against a motion for sanctions.

*Id.* At the very least, in the light most favorable, Plaintiff's withdrawal of the RICO claim should have been weighed against such any significant amount of monetary sanctions.

Concerning the breach of contract claim, the Magistrate Judge overlooked that Plaintiff's claim was never viewed in the required "light most favorable" to Plaintiff, drawing all inferences in its favor rather than against it. First, the Court cited Paragraph 5 for its conclusion that the CDA "specifically exempts from its scope any information 'publicly known at the time of the disclosure.'" ECF No. 75 at 14. But the asserted breach was of Paragraph 7, which by its separate and independent terms proscribed conduct "[i]n addition to the confidentiality

12

obligations set forth in this Agreement." ECF No. 27-2 at 5. Under the Court's unfavorable interpretation, Paragraph 7 was rendered meaningless, as it would be "swallowed up" by the "publicly known" exception from Paragraph 5. *See Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 27 (2d Cir. 1988)) ("Under New York law an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . [is] unsupportable under standard principles of contract interpretation."); *see also id.* (courts should "safeguard against adopting an interpretation that would render any individual provision superfluous"). At the very least, the dismissal of the breach of contract claim was a close call, and this consideration should have weighed against any extraordinary amount of sanctions against Plaintiff and counsel.[8]

Concerning the prior action in South Carolina, the Court stated that the undersigned counsel "filed the instant lawsuit against Shire arising from the same set of circumstances that were asserted in the District of South Carolina." ECF 92 at 2; *see* ECF 75 at 31 (Plaintiff's "claims related to fraud with respect to Brewerton's declaration" violated Rule 11(b)). But this conclusion overlooked

---

[8] The Court also mis-applied the rule about "prohibit[ing] a challenge to the validity of a patent" because the CDA was explicitly time-limited, and could be terminated at will. *See* ECF No. 64 at 4. Therefore, the CDA did not "prohibit" anything *per se*, **only the timing** of, for example, a patent validity challenge. *See, e.g.*, ECF No. 41 at 13-14 n.13 ("Shire breached the CDA not solely because it filed an IPR or sought to invalidate the '813 patent, but because it did so without first terminating the CDA (and waiting the required three months thereafter).").

13

that—in the light most favorable to Plaintiff—the legal posture of the prior action was much different in important, material and legally-significant respects. An attorney should be allowed to rely on the black-letter doctrines of personal jurisdiction, forum selection, *res judicata* and *dicta*, for example, to proceed with a new and different action, in a previously unavailable jurisdiction, asserting new and different claims and remedies, against new and different parties, without fear of Rule 11 sanctions based simply on some degree of overlapping facts or even "the same set of circumstances." At the very least, Plaintiff's belief in his reliance on *res judicata* and *dicta* principles (as well as jurisdiction and forum/venue) should have been weighed against any significant amount of monetary sanctions. *See* 1983 Advisory Committed Notes ("The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.").

## VII. <u>Objection: Including Counsel's Former Law Firm Is Not Justified</u>

Counsel's former law firm—Foundation—should not have been included as a sanctioned party. There is no need to deter Foundation from any future misconduct. Counsel worked with Foundation for fewer than eight months, and no one else from Foundation worked on this suit. *See* ECF No. 85-5 at 1-2. When Foundation learned this action included claims against law firms, the other

attorneys at Foundation were highly critical and strongly opposed to such an action. *See id.* Foundation's opposition was not because it had any information that the case lacked merit. *See id.* Rather, Foundation wanted no part of any action, meritorious or not, against a law firm. *See id.* Indeed, Foundation had previously rejected opportunities to take malpractice cases against other law firms precisely because Foundation did not want to be in the business of suing other attorneys. *See id.* Foundation's business is largely attributable to referrals from other firms. *See id.*

Within weeks of learning of this action, Foundation terminated the undersigned counsel. *See id.* at 2. Foundation's decision was due in large part to its disapproval of any case against another law firm. *See id.* Foundation is composed primarily of corporate attorneys handling contract and license drafting and patent/IP prosecution. *See id.* Foundation also has three litigation attorneys. *See id.* None of the three has been sanctioned personally, and the firm itself has never been sanctioned. *See id.* The undersigned counsel was the only one at the firm working on this matter during his brief tenure at the firm. *See id.* Accordingly, Foundation engaged in no culpable conduct, and sanctions against the firm are not justified.

## VIII. __This Court Should Follow Its Own Analogous *Goldman* Decision__

Just a few months ago in *Goldman v. Barrett*, No. 15-9223, at *10-16 (S.D.N.Y. Sep. 20, 2019), Judge Gardephe of this Court determined in similar circumstances that a request for $305,195 in Rule 11 sanctions for an Amended Complaint that "never should have been filed" was highly excessive. The Court sanctioned plaintiff's counsel $10,000.00. As Judge Gardephe reasoned:

> [A]n award along the lines Barrett proposes would be excessive, and far beyond "what suffices to deter repetition . . . ."
>
> . . .
>
> Moreover, the Court accepts Plaintiffs' counsel's representation . . . that as a "sol[o] practitioner raising a family, paying a substantial sanction would work a financial hardship on [him] and his dependents" . . . .
>
> To be sure, the baseless nature of the allegations in the Amended Complaint "infected the entire pleading" . . . . Some monetary penalty is thus necessary to deter future frivolous filings. On the other hand, Barrett has not demonstrated that [counsel's] conduct - while clearly misguided - was "willful" or "intended to injure." Although Barrett argues that Plaintiffs Goldman and Klatz are "litigation bullies" who "have tried similar tactics before," there is no evidence that [counsel's] decisions with respect to the Amended Complaint were "part of a pattern of activity," or that [counsel] "has engaged in similar conduct in other litigation."
>
> Having considered all of the circumstances, including Plaintiffs' counsel's financial condition, the Court concludes that a penalty of $10,000 "suffices to deter repetition of the conduct or comparable conduct by others similarly situated."

*See id.* (certain internal citations omitted).

Counsel submits that based on this Court's recent, analogous decision in *Goldman*, counsel's offer to resolve for up to $50,000.00 the sanctions issue as directed by this Court in this case should be more than sufficient, particularly given counsel's similar situation as an individual raising a family, for whom "paying a substantial sanction would work a financial hardship on him and his dependents."

## IX.   Conclusion

For the foregoing reasons, the undersigned counsel humbly and respectfully requests this Court's favorable consideration of the foregoing objections to the Magistrate Judge's Report and Recommendation.  If the Court is amenable, counsel requests an opportunity to address this Court personally on the foregoing issues and objections.

Dated:  January 26, 2020              Respectfully submitted,

/s/ Stephen M. Lobbin
Stephen M. Lobbin (admitted *pro hac vice*)
**SML AVVOCATI P.C.**
888 Prospect Street, Suite 200
San Diego, California 92037
Tel: 949.636.1391
sml@smlavvocati.com

# **CERTIFICATE OF SERVICE**

I hereby certify that on January 26, 2020, I electronically filed the above document(s) with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to all registered counsel.

*/s/ Stephen M. Lobbin*